### SOUTHWESTERN BELL TELEPHONE COMPANY, Petitioner,

v.

### Cordelia GREGORY, now Blain, and State Industrial Court, Respondents.

### No. 40129.

Supreme Court of Oklahoma.

July 14, 1964.

As Amended on Denial of Rehearing Nov. 17, 1964.

Application for Leave to File Second Petition for Rehearing Denied March 2, 1965.

Duke Duvall, Melvin R. Quinlan, and James D. Batchelor, Oklahoma City, for petitioner.

Clem Stephenson, Seminole, for respondents.

WILLIAMS, Justice.

The question to be determined in this appeal is whether there is any competent medical evidence to sustain an order of the State Industrial Court awarding death benefits to the children of deceased employee of petitioner.

On August 7, 1956, about 1:30 P.M., Robert Lee Gregory, an employee of petitioner, Southwestern Bell Telephone Company, suffered a coronary occlusion resulting in a myocardial infarction terminating in Gregory's death at approximately 3:15 P.M. that same day.

On June 26, 1957, Cordelia W. Gregory, for herself and the three minor children of deceased and herself, filed a claim for death benefits under the Workmen's Compensation Act with the State Industrial Court. In its answer petitioner alleged that "the cause of decedent's death was sickness and was neither caused by nor contributed to by an accident."

The trial judge entered an order awarding death benefits under the Act to the four claimants. That order was appealed to the State Industrial Court en banc. The court en banc for reasons not here involved vacated that part of the order of the trial judge pertaining to Cordelia W. Gregory and awarded the full death benefits to the three minor children less attorney's fee. The petitioner brings this original action to review such order of the State Industrial Court.

The record discloses that on August 7, 1956, Robert Lee Gregory was employed by petitioner as a telephone installer; that on the morning of that day he had done his usual work of installing telephones; that at lunch he felt fine and in the afternoon about 1:20 went to a customer's residence to install a telephone; that he left the telephone in the living room and walked to the back of the house; that he felt sick and sat down in the shade of a tree; that three times he started across the back yard to the telephone service pole, but on at least the first two of such occasions before he reached the pole it was necessary for him to sit down and rest; that at approximately 2 P.M. he climbed fifteen feet up on the pole and called "test board" at petitioner's plant from the "junction box"; that he told the "switch man" that "his chest was hurting and he was getting numb"; that in reply to the question as to whether "he could get down off of the pole" Gregory stated that he could and was thereupon advised that someone would be sent after him; that shortly thereafter he was taken to a medical clinic where he expired approximately an hour later.

For vacation of the award of the State Industrial Court petitioner advances one proposition containing four sub-divisions. We consider the fourth sub-division dispositive of this original action. Therein petitioner contends that "The record is devoid of probative medical testimony which would sustain an award for the claimant". We agree.

In the case of ·Welch v. Schuler Fruit Company, Okl., 350 P.2d 604, we held that death due to cerebral vascular accident or cerebral hemorrhage was of such nature as to require a determination by skilled and professional persons qualified to give the necessary evidence. In our opinion in that case we stated:

" * * * This court has many times announced the rule that where the disability is such that its nature and cause require that a determination thereof be made by medical experts proof thereof must be made by such experts. Johnson v. Ben Franklin Refining Co., 194 Okl. 347, 151 P.2d 428; Hollis v. Mid-Continent Petroleum Corp., 174 Okl. 544, 51 P.2d 498."

■ The parties do not disagree as to the applicability of the above rule, but their difference arises over whether the testimony of the medical experts, Drs. L. and D., is sufficient to support the award. Thus, the problem before us is to determine whether there was introduced any evidence of effect that Gregory's death in anywise resulted from his climbing the pole after the onset of his coronary occlusion. All three of the medical experts testifying at the trial agreed that the coronary occlusion had its onset prior to the time Gregory climbed the pole.

Drs. L. and D. were expert medical witnesses for the claimants. Dr. L. testified:

"A: (The Witness) Well, it [the climbing] certainly wouldn't have helped him any.

"By Mr. Stephenson:

"Q: Would it [the climbing] probably have aggravated or caused the condition to be worse than it would have been if he hadn't climbed the pole?

"A: I wouldn't like to say 'probably', I'd say 'possibly'.

\* \* \* \* \* \*

"Q: Is it possible that a patient may have had such an attack and if he didn't have excessive exertion such as climbing a telephone pole, that he might have survived; where if he did have such exertion, that he might not survive?

"A: Well, of course that would all depend upon the—

"Q: (Interposing) The particular patient?

"A: The patient and the severity of the lesion. This man had a tremendous lesion which had been coming on for a period of time, but the autopsy showed that it was a massive affair.

"Q: That's right.

"A: And the infarction had started at the time that he performed, before he had performed that particular work. Now from thereon what would happen is pure speculation."

Dr. D. testified:

"Q: (Mr. Sharp) Doctor, is it your testimony, then, that this man was suffering from an advanced arteriosclerotic condition and he had a heart attack of some character at the time he reached the yard, as the evidence so indicates, that he was at that time—at the time that he was in the yard and was hurting and was finding it necessary to rest, he was at that time suffering from a heart attack of some character?

"A: An occlusion, yes. An occlusion of the—

"Q: That was the onset of the occlusion?

"A: Yes.

"Q: Now, is it also your testimony that you cannot say whether or not this was the onset of a fatal attack and that he would have died whether he had or had not climbed another telephone pole? You cannot say that?

"A: You cannot answer that question, yes."

\* \* \* \* \* \*

"Q: You do not know whether or not the area of the infarction was or would have been such that he was go-

ing to die before he climbed the telephone pole?

"A: No, I don't know that."

Dr. T., witness for petitioner, on cross-examination stated:

"Q: (Mr. Stephenson) Now, Doctor, if this man had the infarction on the ground, could that infarction have, or in your opinion, could it have been aggravated, accelerated, or caused to become worse by engaging in the activity of climbing that pole?"

\* \* \* \* \* \*

"A: Anything is possible. In this case, I don't think it made a particle of difference.

"Q: (Mr. Stephenson) You think he would have died, anyway?

"A: Yes, sir.

"Q: Even if the infarction were smaller in area?

"A: According to our autopsy report, the amount of atherosclerosis, or hardening of the arteries there, was quite large, and there is no reason to assume that the amount of infarction this man had at the autopsy was not the same amount as he had or was already set in motion at the time when he occluded. I think it was before he hit the pole."

In the case at bar, there is no testimony by medical experts of effect that Gregory's death was aggravated, accelerated or caused by his climbing the pole. Drs. L. and D. did not state that if Gregory had not climbed the pole the coronary occlusion would not have been fatal. To the contrary, the gist of Dr. T.'s testimony was that the coronary attack would have been terminal regardless of whether Gregory climbed the pole or not.

 We consider the following language in the case of Continental Baking Co. v. State Industrial Commission, Okl., 271 P.2d 379, 381, most applicable to the instant case:

" \* \* \* Although a liberal construction should be placed on the Work-

men's Compensation Act, it is necessary that there be competent evidence upon which to base a finding of an accidental personal injury, arising out of and in the course of the employment. Such testimony may be available but there is none in the record."

Award vacated.

HALLEY, V. C. J., and JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, C. J., and JOHNSON, J., dissent.

Rehearing denied; BLACKBIRD, C. J., and DAVISON, J., dissenting.